# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

In Re: )
) **JUDGE RICHARD L. SPEER**
Patrick/Alyce Croskey )
) Case No. 06-33437
Debtor(s) )
)

## DECISION AND ORDER

This matter comes before the Court after Hearing on the Motion brought by the United States Trustee to Dismiss the Debtors' Case pursuant to 11 U.S.C. § 707(b). At the conclusion of the Hearing, the Court took the matter under advisement so as to afford the time to thoroughly consider the evidence and applicable law. The Court has now had the opportunity and finds, for the reasons herein stated, that the weight of the evidence supports the Motion of the United States Trustee.

## FACTS

The Debtors, Patrick J. and Alyce A. Croskey (hereinafter referred to collectively as the "Debtors"), sought relief under Chapter 7 of the United States Bankruptcy Code. In filing their petition, the Debtors set forth $221,537.78 in total liabilities. Of this amount, $196,889.02 constituted secured claims. The remaining $24,648.76 was comprised of nonpriority unsecured debt. Set against this, the Debtors listed $238,450.00 as the total value of their assets. The Debtors' assets included: (1) their residence valued at $135,000.00; (2) two 401(k) plans, totaling $49,800.00; and (3) four vehicles, totaling $50,500.00.

In their petition, Mr. Croskey disclosed that he has been employed by the Johns-Manville Corporation for approximately 18 years. He set forth from his employment a gross monthly income of $4,499.50. Besides mandatory deductions for taxes and insurance, Mr. Croskey allocates $398.07

for the repayment of a 401(k) loan. After accounting for all of his deductions and allocations, Mr. Croskey revealed a net monthly income of $2,536.90.

The Co-Debtor, Mrs. Croskey, disclosed that she has been employed, for the past eight years, as a Medical Assistant. From this employment, Mrs. Croskey set forth a gross monthly income of $2,584.03. In addition to deductions for taxes and insurance, Mrs. Croskey also allocates $158.25 for a 401(k) loan repayment and $65.00 for a 401(k) contribution. Based on these deductions and allocations, Mrs. Croskey listed a net monthly income of $1,655.89. In all then, the Debtors set forth in their Amended Schedule I a combined average net monthly income of $4,192.79.

Against their combined monthly salary, the Debtors claimed in their Amended Schedule J $4,333.67 in average monthly expenses. These monthly expenses mainly consisted of a first mortgage payment of $1,070.00 and a second mortgage payment of $359.67. In addition, Debtors set forth two vehicle payments: $297.00 for a Honda; and $163.00 for a Yamaha Roadster. In their petition, the Debtors stated that they intended to reaffirm on these debts.

## LEGAL ANALYSIS

This instant case has been brought before the Court on the motion of the United States Trustee (hereinafter "UST") to dismiss this Chapter 7 case under 11 U.S.C. § 707(b)(1). Section 707(b)(1) provides that the bankruptcy court, on its own motion or any party of interest, may dismiss a case filed by an individual debtor under chapter 7 if the debts are primarily consumer debts and if it finds that the granting of relief would constitute an abuse. As a determination of dismissal under this section directly involves the ability of a debtor to receive a discharge and directly affects the creditor-debtor relationship, this matter is a core proceeding over which this Court has been conferred with the jurisdictional authority to enter final orders. 28 U.S.C. §§157(b)(2)(J)/(O); 1334.

In re Patrick/Alyce Croskey
Case No. 06-33437

Section 707(b)(1) contains three initial elements that must be satisfied: (1) the debtor must be an individual; (2) the debts must be primarily consumer debts; and (3) the granting of relief to the debtor under Chapter 7 would, in fact, be abuse. *In re Glenn*, 345 B.R. 831, 835 (Bankr. N.D.Ohio 2006). In regards to the applicability of these elements, the first two were not contested, the focus instead being entirely on the third element of abuse.

On October 17, 2005, the Bankruptcy Abuse Prevention and Consumer Protection Act, (hereinafter referred to as "BAPCPA") came into effect. With the enactment of BAPCPA, significant changes were made to § 707(b). Prior to BAPCPA, the element of abuse was qualified by the word "substantial." However, with the enactment of BAPCPA, the adjective "substantial" was dropped, thus making the standard for dismissal less restrictive. Additionally, with the implementation of BAPCPA, there now exist two methods by which abuse is to be determined. First, § 707(b)(2) provides for a presumption of abuse through the operation of a "means test." Second, § 707(b)(3) provides an equitable test where, when determining abuse, the court is directed to consider if the debtors filed the petition in bad faith or if the totality of the circumstances demonstrate abuse. On these separate methods, the UST's Motion focuses on § 707(b)(3) and the totality of the circumstances standard set forth therein.

In interpreting § 707(b)(3), the Court has relied upon Pre-BAPCPA case law. *In re Wright*, — B.R. —, 2007 WL 895757 (Bankr. N.D.Ohio 2007); *In re James/Lena Oot*, Case No. 06-31622, pg. 5 (March 19, 2007). Prior to BAPCPA, the totality of the circumstances standard for abuse was "predicated upon lack of honesty or want of need." *In re Krohn*, 886 F.2d 123, 126 (6th Cir.1989). The Sixth Circuit further clarified this statement, making it clear that either a "lack of honesty" or a "want of need" would warrant a dismissal under 707(b). *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 434 (6th Cir. 2004). For these separate grounds, the UST's motion to dismiss emphasized the Debtors' "want of need" for Chapter 7 relief.

Page 3

In re Patrick/Alyce Croskey
Case No. 06-33437

When determining if a debtor has a lack of need for relief under Chapter 7, a primary factor is whether the debtor has the "ability to repay his debts out of future earnings." *Krohn*, 886 F.2d at 126. Other relevant factors considered are whether the debtor benefits from a stable income and whether the debtor's expenses can be reduced without depriving him of adequate food, clothing, shelter and other necessities. *In re Belkhe*, 358 F. 3d at 434. In this regard, a primary point of the UST's motion is that the Debtors "can cease repaying the loans to their 401(k) plans." (Doc. No. 12, at pg. 3).

Upon review, this Court agrees with the position of the UST. First, legally the Debtors' 401(k) contribution and loan repayments are not permissible deductions when determining an 'ability to pay' under § 707(b)'s needs-based analysis. Previously this Court explained:

> When looking to a debtor's 'need' in a § 707(b) action, the Sixth Circuit Court of Appeals has set forth the precedent that, 'a debtor's voluntary remuneration to a retirement account, whether by contribution or the repayment of a loan, cannot be excluded from a debtor's disposable income.' The reasoning for this is straightforward: it would be unfair to the creditors to allow the Debtors in the present case to commit part of their earnings to the payment of their own retirement fund while at the same time paying their creditors less than a 100% dividend.

*In re Glenn*, 345 B.R. at 835, *citing Harshbarger v. Pees (In re Harshbarger)*, 66 F. 3d 775 (6th Cir. 1995) and *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 434-35 (6th Cir. 2004).

Moreover, once the Debtors' 401(k) allocations are excluded as a deduction from their income, the Debtors can easily repay their unsecured debts. The total amount the Debtors are allocating toward their 401(k) accounts is $631.32 per month which over 60 months, the length of a Chapter 13 repayment plan, would provide them with $37,879.20 to repay their unsecured creditors. This amount greatly exceeds their outstanding unsecured debt of $24,648.76.

Page 4

In re Patrick/Alyce Croskey
Case No. 06-33437

The Debtors, however, countered, making two related arguments: First, they argue that allocations to their 401(k) accounts should not be factored in an ability to pay analysis because such allocations are mandatory. Second, they argue that such allocations should not be factored in their ability to pay because they would incur tax penalties if they ceased repayment of the 401(k) loans. Both these arguments, however, are insufficient to warrant deviating from the precedent, *supra*, set forth by the Sixth Circuit Court of Appeals.

On the first argument, the Court is unaware of any "authority" which makes the repayment of 401(k) loans mandatory. To the contrary, it seems counterintuitive that a 401(k) loan repayment would be mandatory because it is a loan from a debtor to himself. As it regards the Debtors' second argument, they are likely correct in their assertion that they will incur tax penalties if they cease the repayment of their 401(k) loans. However, as to why this fact should mitigate against a finding of abuse, no explanation was offered. Moreover, the Court can see no reason why the existence of a tax penalty should mitigate against abuse; a tax penalty is simply one of the inherent risks which one assumes when taking a loan against a 401(k) account. In this regard, the purpose of a Chapter 7 is to give truly needy debtors a fresh start, not those who can afford to meet their obligations, a way of escaping their debts. *In re Glenn*, 345 B.R. at 835, *citing In re Jarrell*, 189 B.R. 374, 377 (Bankr. M.D.N.C.1995).

In summation, the Court finds that the Debtors have the ability to repay their unsecured debt. Both Mr. and Mrs. Croskey are currently employed, and both Debtors benefit from a stable income. This, combined with the amounts currently allocated to their 401(k) accounts, shows that the Debtors would have at their disposal the means by which to make a significant, if not complete, repayment of their unsecured debts. Therefore, in following the precedent set forth by the cases cited herein, the Court finds that, in considering the totality of the circumstances, the Debtors lack the "need" for relief under Chapter 7 of the Bankruptcy Code. Therefore, granting the Debtors relief under Chapter 7 would, for purposes of § 707(b)(1), constitute an "abuse." But before dismissal, the Debtors, as

Page 5

**In re Patrick/Alyce Croskey**
**Case No. 06-33437**

also contemplated by § 707(b)(1), will be afforded the opportunity to convert their case to one under Chapter 13 of the Code.

In reaching the above conclusions, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are referred to in this Decision.

Accordingly, it is

**ORDERED** that the Clerk, United States Bankruptcy Court, is directed to prepare for presentation to the Court an order of dismissal under 11 U.S.C. § 707(b)(1) if, at the opening of business on May 15, 2007, this case is still proceeding under Chapter 7 of the United States Bankruptcy Code.

***IT IS FURTHER ORDERED*** that, subject to the Debtors' election to convert this case, the Motion of the United States Trustee to Dismiss under 11 U.S.C. § 707(b)(1), be, and is hereby, GRANTED.

Dated: May 1, 2007

_____
Richard L. Speer
United States
Bankruptcy Judge

# CERTIFICATE OF SERVICE

Copies were mailed this 1st day of May, 2007 to:

Alyce A. Croskey
712 Pierce St
Maumee, OH 43537

Patrick J. Croskey
712 Pierce St
Maumee, OH 43537

Gordon R Barry
930 Spitzer Bldg
Toledo, OH 43604

John N Graham
5151 Monroe St, #245
Toledo, OH 43623

Dean Wyman
Howard M. Metzenbaum U.S. Court House
201 Superior Ave, Suite 441
Cleveland, OH 44114

/s/Diana Hernandez
Deputy Clerk, U.S. Bankruptcy Court